# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

UNITED STATES OF AMERICA,        )
                                 )
Plaintiff/Respondent,            )
                                 )
vs.                              )    NO. 3:06-cr-31
                                 )       (3:10-cv-101)
GORDON BROWNLEE,                 )
                                 )
Defendant/Petitioner.           )

## OPINION AND ORDER

This matter is before the Court on the Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed by pro se Petitioner, Gordon Brownlee, on March 22, 2010. For the reasons set forth below, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Gordon Brownlee (Inmate Reg. No. 08725-027), Satellite Camp, P.O. Box 33, Terre Haute, IN 47808, or to such other more current address that may be on file for the Petitioner.

BACKGROUND

On March 9, 2006, a two count indictment was filed against Petitioner, Gordon Brownlee, Orma D. Vanschoyck, and Brian L. Vanschoyck. Count 1 alleged Brownlee possessed with the intent to

distribute over 1,000 plants of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count 2 charged Orma and Brian Vanschoyck with being accessories to a federal offense after the fact, in violation of 18 U.S.C. § 3. Orma and Brian Vanschoyck filed motions to sever their cases from the instant case, and the district court granted the motions to sever (DE #30). Orma and Brian Vanschoyck were found guilty by a jury on August 10, 2006. On December 15, 2006, the district court sentenced Orma Vanschoyck to 21 months imprisonment followed by 2 years of supervised release; and Brian Vanschoyck was sentenced to 37 months imprisonment followed by 2 years of supervised release.

Brownlee's jury trial commenced on August 29, 2006. A few days later, on August 31, 2006, the jury found Brownlee guilty as to Count 1. On December 18, 2006, the district court sentenced Brownlee to 120 months imprisonment followed by 3 years of supervised release (DE #79).

Brownlee and Orma Vanschoyck's convictions were consolidated for appeal, and were affirmed by the Seventh Circuit. *See United States v. Vanschoyck and Brownlee*, 309 F. App'x 23 (7th Cir. 2009). Brownlee petitioned for certiorari to the Supreme Court, which was denied on June 1, 2009. *See Brownlee v. United States*, 129 S. Ct. 2758 (June 1, 2009). Therefore, Brownlee timely filed the instant motion under section 2255 on March 22, 2010, within the one year time limit. The Government filed its response memorandum on June

28, 2010. Brownlee then filed a reply on July 21, 2010. Having been fully briefed, this motion is now ripe for adjudication.

Brownlee sets forth 4 main arguments in his section 2255 petition, all of which relate to the claim of ineffectiveness of trial counsel: (1) for advising Brownlee to stipulate that the amount of marijuana plants was in excess of 1,000 plants; (2) for failing to move for the suppression of officers' testimony regarding the surveillance of the property where the marijuana was being grown; (3) for failing to call certain witnesses at trial; and (4) for not properly arguing the motion for acquittal during trial. Additionally, Brownlee requests an evidentiary hearing. The Government refutes each of these arguments, contending that Brownlee was given effective assistance of counsel during trial.

The facts surrounding Brownlee's offenses are set forth in the Seventh Circuit's order, *Brownlee*, 309 Fed.Appx. at 23, and are recited herein as follows:

In May 2005, Brownlee talked to his friend, Patricio Bautista, about growing marijuana on a section of farmland owned by the Brownlee family trust. (Trial Tr. Vol. II at 54.) According to Bautista, Brownlee asked Bautista if someone could grow marijuana on Brownlee's property. *Id.* Brownlee lived in a farmhouse on that property with his girlfriend, Vanschoyck, and five children. *Id.* at 157. Bautista returned to the property a few weeks later to select a grow location with three other men from Chicago - Efren

Lopez-Mariscal, Ernesto Hernandez, and Jorge Hernandez. *Id.* at 54. Brownlee drove them in his truck, giving them a tour of the property. *Id.* at 54-64. About a week later, Bautista and the men returned to Brownlee's property to plant the marijuana seeds. *Id.* at 57-58. Over the next several months, the men returned approximately seven times to clean the area where the marijuana was being grown and water and feed the plants. *Id.* at 106. During each trip, the men went to Brownlee's house before going to work in the plot. *Id.* at 107. Brownlee personally drove the men to the plot once, and went to the plots on two occasions. *Id.* at 107-08. At some point, Brownlee did not drive the individuals back to the plot because, according to Bautista, Brownlee was on house arrest. *Id.* at 108. Bautista usually stayed at Brownlee's house, and did not work in the field during these trips. *Id.* at 60-61.

On July 29, 2005, an Indiana State Police ("ISP") trooper participating in the Marijuana Eradication Program spotted the Brownlee marijuana plot from an ISP surveillance airplane. (Trial Tr. Vol. II at 83.) State troopers then visited the location and found two plots of marijuana being grown. *Id.* at 11, 14. Manned surveillance was also conducted in the hope of catching the cultivators, and the troopers installed a video camera system and a cell phone dialer system which advised the troopers of activity in the plot. *Id.* at 14-15. These plots turned out to be the largest marijuana grow operation ever uncovered in Indiana. *Id.* at

23.

On the afternoon of August 16, 2005, after receiving a message on their cell phone dialer alerting the troopers to activity, troopers arrived at the property and found three Hispanic males working, including Lopez-Mariscal. (Trial Tr. Vol. II at 23-24.) The workers ran from the scene, and Bautista was apprehended at Brownlee's house later that day. *Id.* at 25. Lopez-Mariscal was apprehended at Brownlee's house the next morning. *Id.* at 111-12. The following day, the ISP removed and destroyed nearly 3,000 marijuana plants from the Brownlee property. *Id.* at 32-33.

In a separate but related case to Brownlee's, Bautista and Lopez-Mariscal were charged with possessing marijuana with intent to distribute in excess of 1000 plants, in violation of 21 U.S.C. §841(a)(1), along with Jorge and Ernesto Hernandez (who were never apprehended). Lopez-Mariscal pled guilty and testified at the trial of Bautista on December 19-20, 2005. In that trial, the jury found Bautista guilty of the same offense. (Govt. Ex. 2, Verdict in *United States v. Bautista*, Cause No. 3:05-cr-098, December 20, 2005 (N.D. Ind.)). Lopez-Mariscal and Bautista both testified in Brownlee's trial the following summer, on August 30, 2006.

DISCUSSION

Relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812,

5

816 (7th Cir. 1996). In order to proceed on a petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.* A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; see also Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Brownlee's motion, the Court is mindful of the

6

well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't.*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Brownlee's claims with these guidelines in mind.

Claims of ineffective assistance of counsel are governed by

the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the deficient-performance prong, great deference is given to counsel's performance and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). Defendant must establish specific acts or admissions to fall below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under Strickland that they have been

denied a fair trial by the gross incompetence of their attorneys
will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86
(7th Cir. 2005). Additionally, trial counsel "is entitled to a
'strong presumption' that his performance fell 'within the range of
reasonable professional assistance' and will not be judged with the
benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518,
521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689).


Trial Counsel Was Not Ineffective for Advising Brownlee to
Stipulate to the Number of Marijuana Plants

First, Brownlee argues that his trial counsel was ineffective
when he gave "unobjective advice to enter into a stipulated
agreement with the prosecution as to the number of marijuana plants
relevant in the instant case." (2255 Pet. at 4.) According to
Brownlee, his counsel told him that the prosecution had a video
documenting the number of marijuana plants found, and showing law
enforcement officers counting the plants. *Id.* at 5. Brownlee's
counsel told him it would be a "waste of time" to argue the
specific number of plants involved because the same argument was
made and lost by the other defendant, Patricio Bautista, in the
related case, 3:05-cr-98. Brownlee now argues that his counsel
"coerced him into signing the prosecution's prepared stipulation
that the amount of plants involved exceeded 1000 plants," locking
him into a mandatory minimum sentence of 120 months upon the guilty

verdict. *Id.* Brownlee claims he suffered prejudice because he later "discovered that the video referred to by his attorney did not support a finding of more than 1000 plants. The prosecutions [sic.] video in fact only demonstrated officers counting a total of about 800 plants." *Id.* at 6.

Brownlee cites *United States v. Taylor*, 471 F.3d 832 (7th Cir. 2006), in support of the argument that his counsel gave ineffective assistance in recommending that he stipulate to the number of marijuana plants. However, *Taylor* is not on point. In that case, the Seventh Circuit vacated the defendant's sentence because at trial, two detectives testified that a total of 1,417 marijuana plants were counted; however, neither detective testified to his individual count of his share of the plants, and a third detective who participated in the count did not testify at all. *Id.* at 841. Thus, the *Taylor* Court found that the evidence of the total number of plants counted was inadmissible hearsay. *Id.* In this case, one of the officers who conducted the count did actually testify at trial, so there are no hearsay issues. Trooper Larsh participated in the count, and testified that he believed there were 2,876 plants on Brownlee's property. (Trial Tr. Vol. II at 33.)[1]

---

[1] The jury in *Bautista* actually found that there were 2,687 plants involved. Trooper Larsh may have been mistaken in this trial as to the exact number, or this may be a typographical error in the transcription. Regardless, it is undisputed that Trooper Larsh testified that significantly more than 1,000 plants were counted.

The stipulation at issue in this case states as follows:

> Specifically, the government and the defendant STIPULATE and AGREE that the following facts are proved beyond a reasonable doubt:
>
> > 1. That on or about August 17, 2005, Indiana State Police troopers collected representative samples of marijuana plants from a suspected marijuana cultivation operation located in southern LaPorte County, Indiana, in the Northern Judicial District of Indiana.
> >
> > 2. That these samples were tested by a qualified, experienced chemist with the Indiana State Police, and that all samples tested positive for marijuana, a Schedule I controlled substance.
> >
> > 3. That the number of marijuana plants collected and destroyed by the Indiana State Police numbered in excess of one thousand (1,000) plants.

(Govt. Ex. 3.)

In this case, Brownlee cannot show that he was prejudiced by his counsel's recommendation to stipulate that more than 1,000 marijuana plants were found. *See United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance.") To show unconstitutional prejudice, Brownlee must demonstrate that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694.

This case is similar to *Hooker v. Mullin*, 293 F.3d 1232, 1246

(10th Cir. 2001), which held that it is not ineffective assistance of counsel to stipulate to aggravating circumstances when a "jury would have found these. . . aggravating circumstances regardless of the stipulations." Here, we know the jury would have found that there were more than 1,000 marijuana plants, because the jury in *Bautista* actually heard that evidence, and found Bautista guilty, determining in a special verdict that Bautista possessed 2,687 plants. (Govt. Ex. 2, Verdict and Special Verdict, Cause No. 3:05-cr-098, December 20, 2005.) In *Bautista*, Trooper Jason Sample testified that 2,687 plants had been removed from the plot, and that the removal was videotaped to get an accurate count. (Govt. Ex. 4, *United States v. Bautista*, December 19, 2005 Trial Tr. at 87.) Later in that trial, portions of the videotape of the counting were shown to the jury. Brownlee's assertion in this petition that the videotape only showed about 800 plants being counted is entirely speculative and unsupported by anything in the record in this case. He sets forth no facts that support his speculative allegation. Because, if introduced at trial, the evidence would have shown that more than 1,000 plants were on the property, Brownlee was not prejudiced by his lawyer's recommendation to stipulate to the number of marijuana plants. As such, he fails the prejudice prong of the *Strickland* test.

Even if this Court were to analyze the claim under the second prong of *Strickland*, Brownlee's argument still fails. Given the

fact that the prosecution could prove that more than 1,000 plants were found (indeed, it did prove this in the related case of *Bautista*), it would have been a waste of time for defense counsel to argue this fact to the jury. Counsel's stipulation was "an entirely understandable strategic decision." *Fox v. Ward*, 200 F.3d at 1286, 1295 (10th Cir. 2000). Thus, trial counsel made a strategic decision within the parameters of reasonable professional competence when entering into the stipulation. *See Hooker*, 293 F.3d at 1246.

### Trial Counsel Was Not Ineffective When He Did Not Move to Suppress Evidence

Brownlee also claims that his trial counsel was ineffective because he failed to move for suppression of evidence. Specifically, Brownlee argues that his attorney should have moved to suppress the Government's allegedly illegal surveillance of the marijuana plot. He tries to negate the "open fields doctrine," urging that the aerial and manned surveillance was improper because two campgrounds were located within 200 yards from the location where the marijuana was found, and individuals in the privately owned campgrounds had an expectation of privacy. (2255 Pet. at 8.)

It is true that a failure to file a motion to suppress, in certain instances, may support a claim of ineffective assistance. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 385-86 (1986) (finding total failure to conduct pretrial discovery and file

suppression motion, not due to strategic considerations, but because counsel was unaware of the State's intention to introduce evidence, was constitutionally deficient assistance of counsel). However, in this case, because there is no evidence that a motion to suppress would have been successful, Brownlee cannot show that he was prejudiced by failing to have a suppression motion or that his counsel's actions fell below an objective level of reasonablenes.

The "open fields" doctrine was announced in *Hester v. United States*, 265 U.S. 57, 59 (1924), which states that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects', is not extended to the open fields." The Seventh Circuit has applied *Hester* to conclude that the curtilage of a private dwelling or business is entitled to Fourth Amendment protection as well. *See Siebert v. Severino*, 256 F.3d 648, 653-54 (7th Cir. 2001). The home's curtilage encompasses "the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home." *Id.* (citing *United States v. Shanks*, 97 F.3d 977, 979 (7th Cir. 1996) (quoting *United States v. Pace*, 898 F.2d 1218, 1228 (7th Cir. 1990)). The Supreme Court announced a four-factor inquiry to determine whether an area is within the curtilage of a home:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is

> included within an enclosure surrounding the home,
> [3] the nature of the uses to which the area is
> put, and [4] the steps taken by the resident to
> protect the area from observation by people passing
> by.

*United States v. Dunn*, 480 U.S. 294, 301 (1987).

In applying the *Dunn* test, it is obvious that the area where the marijuana was found was not in the curtilage of Brownlee's home. First, the marijuana plots were located just under one mile south of Brownlee's home. (Trial Tr. Vol. II at 28-29; *see also* Gov't Ex. 5 (aerial photograph of Brownlee's property showing distance from Brownlee's home to surveilled area).) Just shy of one mile is a large distance away from Brownlee's house. As the *Dunn* Court stated, "[s]tanding in isolation, this substantial distance supports no inference that the [plots] should be treated as an adjunct of the house." *Dunn*, 480 U.S. at 302. Brownlee has not asserted that the area was included within any enclosure surrounding the home, like a fence. To the contrary, Officer Larsh testified that the area was not fenced, and did not have any "No Trespassing" signs or similar postings. (Trial Tr. Vol. II at 32.) Regarding the third and forth prongs of the test, Brownlee does argue that people from the alleged campgrounds walked in the area (2255 Pet. at 8), and that Brownlee himself often camped in that area with his family (Reply at 5). However, this argument does not necessarily help Brownlee - the fact that other campers were allegedly allowed to walk in the area actually undermines his

argument that Brownlee was trying to protect the area from observation by people passing by.  The Court therefore finds that the marijuana plots were not so intimately related to the activities of Brownlee's home that they would be recognized as "curtilage" and protected by the Fourth Amendment.

Brownlee urges the search was improper because there were "privately owned campgrounds and thus not open to the public" within 200 yards of the marijuana plots.  (2255 Pet. at 8.) Although there is a dispute about whether any private campgrounds indeed existed; regardless, Brownlee must prove a *personal* expectation of privacy (not a third party's) in order to succeed on a motion to suppress.  As the Supreme Court has held:

> [I]n determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.  Thus, . . . in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quotation omitted). In other words, any arguable expectation of privacy by the alleged campers does nothing to establish Brownlee's personal expectation of privacy to that area.  Moreover, even if the Court takes as true Brownlee's unsupported assertion that he and his family

16

occasionally camped in this land, the Court does not find that alone persuasive to establish a true privacy expectation. Brownlee does not allege that he had a camping trailer there, or other permanent structure. Moreover, Brownlee's own petition establishes that this land was accessible to other people - he has alleged other campers in the area, Mary Brownlee had permission to hunt in the area of the farm, hunters "routinely hunted in the area," and two timber companies "had total access to Brownlee's land." (2255 Pet. at 8-11.) Thus, the police officer's surveillance "invaded no right of privacy of person or premises which would entitle [Brownlee] to object to its use at his trial." *Wong Sun v. United States*, 371 U.S. 471, 492 (1963).

Brownlee has failed to identify a reasonable expectation of privacy in the land that was subject to the airplane surveillance. As such, he has suffered no prejudice due to his counsel's decision not to file a motion to suppress, and such decision indeed was not objectively unreasonable under *Strickland.*

Trial Counsel Was Not Ineffective For Failing To Call Additional Witnesses

Next, Brownlee argues that his counsel was ineffective when he failed to secure available witnesses to testify at trial - his cousin, Mary Brownlee, neighbors Chet Downey and Joseph Tohulski, and two timber company representatives. In response, the Government

argues that defense counsel's strategy to omit these witnesses from trial was sound.

Failure to investigate can sometimes be so egregious as to support an ineffective assistance of counsel claim. *See United States v. Gray*, 878 F.2d 702, 711-12 (3d Cir. 1989). However, defense counsel need not "track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it." *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). The Seventh Circuit has found that:

> The Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record.

*United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990). Moreover, acts or omissions that may be classified as trial tactics cannot be considered by the court in an ineffective assistance of counsel claim. *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (ruling that the *Strickland* test is "highly deferential" to counsel, "presuming reasonable judgment and declining to second guess strategic choices."); *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994); *United States v. Limehouse*, 950 F.2d 501, 504 (7th Cir. 1991) ("[t]rial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim."); *Balzano*, 916 F.2d at 1294-95 (strategic decisions are virtually unchallengeable); *Williams v. McVicar*, 918 F. Supp. 1226, 1233-34

(N.D. Ill. 1996) (ruling that trial strategy is not a viable subject for review by the court).

Before addressing the witnesses that Brownlee argues should have testified, the Court pauses to note the five individuals who did actually testify on behalf of the defense: Donald Vandierendonck (who leased and farmed the Brownlee property); Wayne Brownlee, II (Defendant's brother); the Defendant's son; Dennis Dadlow (a neighbor and friend); and Dennis Combs (a member of the local fly fisherman's association). (Trial Tr. Vol. II at 137-76; Trial Tr. III at 1-8.)

At trial, Donald Vandierendonck testified that he leased and farmed the Brownlee property near where the marijuana was found. (Trial Tr. Vol. II at 139-40.) Vandierendonck said he had seen cars parked near the wooded area where the marijuana was grown, which he assumed belonged to people who were fishing or hunting, and Brownlee never told him not to go in the wooded areas. *Id.* at 141. On cross examination, Vandierendonck admitted that he did not see any cars parked near the wooded area in the summer of 2005. *Id.* at 143.

Wayne Brownlee, II, testified that he hunted on the property himself, and had given permission to several people to hunt on the property where the marijuana was found. (Trial Tr. Vol. II, at 148-50.) Gordon Brownlee never told him "not to let anyone go back there [where the marijuana was located]." *Id.* at 150.

Defendant's son testified that during the Spring and Summer of

19

2005, he had gone to the area near where the marijuana plot was located "[a] couple of times with [his] brothers" to "[j]ust mess around." *Id.* at 165.  No one ever told him not to go back to that area.  *Id.*

Dennis Dadlow, a neighbor and friend, testified that he spoke to Brownlee in May or June of 2005 about taking a camper to the area near where the marijuana was grown.  (Trial Tr. Vol. II at 172-73.) Brownlee gave him permission to take a camper there, but they never made it to the area.  *Id.* at 173.  Additionally, Brownlee gave Dadlow permission to take his wife to show her the river.  *Id.*

Finally, Dennis Combs, a member of the St. Joseph River Valley Fly Fishers, testified that he spoke with Brownlee in May or June of 2005, and that club members had permission to fish on the Little Kankakee River on the property, near the marijuana operation. (Trial Tr. Vol. III at 5-6.)  Brownlee only asked that members notify himself or his brother if they were going to fish on the property.  *Id.* at 8.

Now, the Court turns to the witnesses which Brownlee allegedly told his counsel about, and desired to have testify at trial: Mary Brownlee (his cousin), neighbors Chet Downey and Joseph Tohulski, and two timber company representatives.  (2255 Pet. at 9-11.) Although Brownlee sets forth each of these additional witnesses in his memorandum, he fails to document the claims of their alleged testimony by way of affidavit, contracts, or any other evidence.

As the Seventh Circuit has held, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (citing *Brown v. McGinnis*, 922 F.2d 425, 428 (7th Cir. 1991)). "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *Ashimi*, 932 F.2d at 650 (citing *United States v. Muehlbauer*, 892 F.2d 664, 669 (7th Cir. 1990)(absent indication of what putative witness's testimony might have been, the court attributes counsel's failure to call witness to routine trial tactics)). Even assuming, *arguendo*, that we accept Brownlee's representation of the additional testimony as true, the Court still cannot find that Brownlee received ineffective assistance of counsel.

First, Brownlee argues that he told counsel about his cousin, Mary Brownlee. Brownlee alleges that he gave his cousin permission in the Spring to hunt for mushrooms and raspberries in the area of his farm where the marijuana was discovered, and that Brownlee explicitly warned his cousin not to plant marijuana in the farm because of her "past history of incidents involving the growing of marijuana." (2255 Pet. at 9-10.) Brownlee argues that this testimony could have shown that he did not willingly and knowingly agree to have Bautista grow marijuana in the same location that he refused to let his cousin plant marijuana. *Id.* at 10. The Court

believes the testimony of Mary Brownlee (about being given access to the area near the marijuana growth), would have been cumulative to the similar testimony of Vandierendonck, Wayne Brownlee, Lorne Brownlee, Dennis Dadlow and Dennis Combs.  Moreover, her credibility likely would have been damaged by Mary Brownlee's previous association with growing marijuana.  *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (finding defense counsel's decision not to call codefendant as witness was a "reasonable trial tactic" because, *inter alia*, codefendant was a convicted felon whose credibility would have been at issue).

Brownlee also told his counsel about a neighbor on the East side of his property, Chet Downey.  According to Brownlee, Downey would have testified that in the Spring of 2005, he discovered 3 Hispanic males crossing his property from Brownlee's property. (2255 Pet. at 10.)  The significance of this speculative testimony is questionable.  Additionally, this story is consistent with Bautista's testimony that he had been hunting with two of the other defendants on Brownlee's property in June or July of 2005.  (Trial Tr. Vol. II at 64.)

Brownlee identified another neighbor who was willing to testify, Joseph Tohulski, who would have testified that the canoes on his campground had disappeared on several occasions for short periods of time.  (2255 Pet. at 10.)  Brownlee urges that this testimony suggests that the growers of the marijuana were using

Tohulski's property as a way to access Brownlee's land and farm area unbeknownst to him. *Id.* This testimony about mysterious missing canoes is speculative and vague, has little evidentiary value, and would not have substantially aided Brownlee's defense.

Brownlee also requested that his attorney contact one or more of the hunters who hunted in the area where the marijuana had allegedly been discovered, to contradict the prosecution's testimony that the marijuana would have been harvested before the hunters started going in the woods. *Id.* at 10-11.

Finally, Brownlee asked his counsel to call representatives from two timber companies. According to Brownlee, he had a signed contract with two timber buyers in the Fall of 2004 to buy the entire area during the Summer of 2005. *Id.* at 11. The timber companies had full access to all areas of the farm, and could have testified about the normal business dealings of the farm. *Id.*

In applying *Strickland*, the Court tries to resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). It is not our task to "call the plays," rather, we must "evaluate the conduct from counsel's perspective at the time," and indulge the "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.*; *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1314 n. 14 (11th Cir. 2000)(describing decision to call some witnesses and not

others as "the epitome of a strategic decision"). The presumption may only be overcome by showing that: (1) the performance of Brownlee's trial counsel fell below an objective standard of reasonableness; and (2) this performance prejudiced Brownlee's defense. *See Muehlbauer*, 892 F.2d at 668. Here, the Court cannot say that in failing to investigate and/or call the additional witnesses that Brownlee's counsel performed below an objective standard of reasonableness. Most of the additional testimony is cumulative, or has questionable value to Brownlee's defense. Moreover, Brownlee has not established prejudice, or that but for the failure to call the additional witnesses at trial, there was a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Even if we take the alleged testimony at face value (despite the lack of affidavits, timber contracts, or other indicia of veracity), and assume the evidence could have gone in at trial, the evidence does not negate the very weighty evidence presented by the Government at trial that Brownlee initiated the marijuana operation by talking to his friend Bautista, that he drove the men to the field (as testified to at trial by Brownlee's co-defendants, Lopez-Mariscal and Bautista), and that Brownlee either knew about the marijuana operation or deliberately avoided learning the truth.[2] Because Brownlee has not

---

[2] At trial, the Court gave the "ostrich" or "deliberate avoidance" instruction, which was specifically addressed and upheld by the Seventh Circuit in *United States v. Vanschoyck and*

shown how the testimony would have changed the outcome at trial, he has also failed to show prejudice.

### Trial Counsel Was Not Ineffective For Only Making An Oral Motion For Judgment of Acquittal

Last, Brownlee argues that he received ineffective assistance of counsel because his trial lawyer only "made an oral motion for judgment of acquittal." (2255 Pet. at 12-13.) Specifically, Brownlee criticizes his counsel for failing to prepare and file a written brief in support of such motion. According to Brownlee, had his counsel filed a written memorandum, "perhaps the end result of the proceedings would have been different. . . ." *Id.*

A motion for acquittal made at the close of evidence preserves the issue for review on appeal. *United States v. Whitlow*, 381 F.3d 679, 685 (7th Cir. 2004). So preserved, a conviction will be reversed "only if, after viewing the evidence in the light most favorable to the government [the court] determine[s] that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010). In this case, by making an oral motion for acquittal, Brownlee's counsel indeed preserved the issue for appeal. Brownlee has put forth no evidence whatsoever that, had his counsel briefed the issue in writing, the Court would have likely granted the motion

---

*Brownlee*, 309 F. App'x 23 (7th Cir. 2009).

for acquittal.  There was ample evidence presented at trial in this case of Brownlee's guilt.  As such, the "prejudice" prong has not been satisfied.  Additionally, trial counsel performed reasonably, and appropriate when he did indeed orally move for a motion for judgment of acquittal.  In this Court's experience, counsel typically makes this motion orally, and rarely requests the opportunity to put the argument in writing.  Finally, "[f]ailing to make a motion for a judgment of acquittal that had no chance of success fails both prongs" of the *Strickland* test.  *See United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004).

Request For An Evidentiary Hearing

Brownlee requests that the Court "convene an evidentiary hearing as soon as possible in order to settle all pertinent material matters here prior to resolving this motion." (2255 Pet. at 1.)  An evidentiary hearing need not be held for every section 2255 motion.  *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990).  "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted).

Brownlee has failed to offer the Court any objective facts

26

outside the trial record that would warrant an evidentiary hearing. Moreover, the Court has concluded that the record and history of this case demonstrate that Brownlee is not entitled to relief. Therefore, an evidentiary hearing is not warranted. *See Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) (holding district court did not abuse its discretion in denying evidentiary hearing where defendant was not entitled to 2255 relief, and given lack of additional evidence from defendant).


CONCLUSION

For the reasons set forth above, the Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Gordon Brownlee (Inmate Reg. No. 08725-027), Satellite Camp, P.O. Box 33, Terre Haute, IN 47808, or to such other more current address that may be on file for the Petitioner.


**DATED: October 26, 2010**          **/s/ RUDY LOZANO, Judge**
                                     **United States District Court**